IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SONJA FLOYD-KEITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:09cv769-WKW |
| ) | (WO) |
| HOMECOMINGS FINANCIAL, LLC, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The pro se plaintiff, Sonja Floyd-Keith ("Floyd-Keith"), asserts violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691; the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* against defendants Homecomings Financial, LLC ("Homecomings") and GMAC Mortgage, LLC ("GMAC").[1] Floyd-Keith contends that the defendants applied their criteria for evaluating her application for a residential mortgage loan more stringently because she is African-American.  The court has jurisdiction of these claims under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction.

Now pending before the court is the defendants' motion for summary judgment.

---

[1] The plaintiff specifically brings this lawsuit against "Homecomings Financial, LLC and GMAC Mortgage, LLC and their affiliates including but not limited to GMAC Bank and Residential Funding Company, LLC." (Doc. No. 1, p. 1.)  The defendants identify Homecomings Financial, LLC, GMAC Mortgage, LLC, Residential Funding Company, LLC, and Ally Bank f/k/a GMAC Bank f/k/a GMAC Automotive Bank as parties to this lawsuit.  (Doc. No. 10.)

(Doc. No. 67.) The court has carefully reviewed the motions for summary judgment, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials and concludes the defendants' motion for summary judgment should be granted.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox*, 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine

whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also De Long Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III.  FACTS

After renting a house on East Brookwood Drive in Montgomery, Alabama for over ten years, Floyd-Keith decided she wanted to purchase a home in a better neighborhood for herself and her children. Upon finding a house for sale on Andre Drive which met her specifications, Floyd-Keith began the mortgage application process. (Attach. to Doc. No. 69, Defs' Ex. 1, Pl's Dep., p. 59.) Floyd-Keith went to Superior Mortgage to secure a loan for her new house. (*Id.*, p. 109, 114.)

On July 26, 2006, Albert Taylor, a loan officer at Superior Mortgage, submitted Floyd-Keith's loan information to Homecomings. (Attach. to Doc. No. 69, Defs' Ex. 3, Flores' Affid., p. 2.) On July 27, 2007, Floyd-Keith received a good faith estimate of settlement charges estimating the amount financed as $82, 796.95, an annual percentage rate of 11.1488%, finance charges of $188,144.27, and total payments of $270,941.22. (Defs' Ex. 3, pp. 102-103.)

Shortly after Floyd-Keith received the good faith estimate from Superior Mortgage, an underwriter at Homecomings reviewed Floyd-Keith's loan application and asked Jann Neely ("Neely"), the Senior Pre-funding Coordinator, to complete a pre-fund review of the documentation. (Defs' Ex. 2, Neely's Affid., p. 1.) Neely determined that the proposed loan was 100% combined loan to value and had a 63% debt-to-income ratio. (*Id*.) Neely also recalled that Superior Mortgage had been placed on a "watch list" by Homecomings because the mortgage company had submitted "altered and/or incorrect documentation" on other loan applications in the past. (*Id*., pp. 1-2.)

On several occasions during the loan review process, Taylor, the loan officer at Superior Mortgage, contacted Floyd-Keith and advised her that the underwriters at Homecomings or GMAC needed more information. (Pl's Dep., p. 86, 97, 120-21.) Taylor specifically requested that Floyd-Keith provide additional pay stubs and employment documentation. (*Id*.) Around this time, an assistant at the high school where Floyd-Keith was employed told her that a person had called the school and asked her to verify Floyd-

Keith's employment. (*Id*., pp. 98-99.) The assistant told Floyd-Keith that she asked the person to call back later. (*Id*., p. 99.) The assistant also told the plaintiff that, when she answered the phone again later that day, someone hung up when they heard her voice and that the school's caller identification system indicated the call was from someone at Homecomings. (*Id*., p. 100.)

Upon determining that Floyd-Keith's employment could not be verified,[2] that the loan application documents indicated a low income, that the loan was 100% combined loan to value with a 63% debt-to-income ratio, and that Superior Mortgage was on a "watch list," Neely recommended that Floyd-Keith's loan be denied and that Homecomings review its relationship with Superior Mortgage. (Neely's Affid., p. 2.)

On August 22, 2007, Homecomings sent a letter to Superior Mortgage, along with a notice of adverse action, advising that Floyd-Keith's application was denied and that Superior Mortgage was legally obligated to provide Floyd-Keith with the statutory notice. (*Id*., p. 3.) Floyd-Keith did not receive the notice. (Pl's Dep., p. 39.)

## IV.  DISCUSSION

### A. The ECOA Claim

Floyd-Keith asserts that the defendants violated the ECOA when they rejected her application for a home loan on the basis of her race as an African-American. Specifically, she asserts that the defendants subjected her to a more vigorous loan application process than

---

[2] Floyd-Keith disputes that her employment could not be verified.

5

white applicants and failed to provide her with notice of their reasons for the denial of her loan application.[3] (Doc. No. 80, p. 9.)

### 1. The ECOA discrimination claim

"'The ECOA is an anti-discrimination statute which prohibits creditors from discrimination in the extension of credit. . . . It was enacted to protect consumers from discrimination by financial institutions.'" *Nicholson v. Johanns*, No. 06-0635-WS-B, 2007 WL 3407045 (S.D. Ala. 2007) (quoting *Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 578 (D. Del. 2006)). The ECOA creates a private right of action against a creditor who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a)(1).

Courts have applied the analytical framework of Title VII of the Equal Employment Opportunity Act to discrimination claims under the ECOA. *See, e.g.*, *Nicholson v. Johanns*,

---

[3] The defendants maintain that the plaintiff's ECOA claim is based entirely on the argument that Floyd-Keith was not provided with the statutorily required notification when her loan application was not approved. (Doc. No. 68, p. 19.) The defendants argue that the plaintiff's ECOA claim is not cognizable in this lawsuit because she acknowledged during her deposition that she did not "think that [she was] not provided that disclosure because of [her] race." (*Id.*, p. 20.) When reading the plaintiff's deposition testimony in its entirety, along with her amended complaint and response to the defendant's motion for summary judgment, the court concludes that the plaintiff has raised a claim that the defendants violated the ECOA by subjecting her to more vigorous requirements than white applicants and by failing to provide her notice. For example, after initially indicating that the failure to provide her the statutory notice was not based on race, Floyd-Keith further stated that she "cannot draw conclusions for things I don't know." (Defs' Ex. 1, Pl's Dep., R. 83.) Furthermore, the plaintiff asserts throughout her complaint and amendments thereto that the defendants discriminated against her by requiring her to provide proof of her income in several different forms and subjecting her to other more vigorous requirements than white applicants. Out of an abundance of caution, the court will discuss the plaintiff's allegations that she was not provided notice and was treated differently from white applicants when determining whether the defendants' motion for summary judgment with respect to the ECOA claim should be granted.

No. 06-0635-WS-B, 2007 WL 3407045, at *5 (S.D. Ala. Nov. 13, 2007); *Cooley v. Sterling Bank*, 280 F. Supp. 2d 1331, 1338 (M.D. Ala. 2003). In a discrimination case, the plaintiff bears the ultimate burden of proving intentional discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To defeat the defendants' motion for summary judgment, Floyd-Keith must establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Floyd-Keith has not presented any direct evidence of discrimination nor does she rely on statistical evidence to support her discrimination claims. Thus, the court will discuss whether Floyd-Keith has established circumstantial evidence of discrimination.

The Supreme Court in *McDonnell Douglas Corp., supra*, created the now familiar framework for the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184 (11th Cir. 1984). To establish a prima facie case of discriminatory administration of a credit transaction, a plaintiff must demonstrate that (a) she is a member of a protected class, (b) she applied for and was qualified for an extension of credit, (c) despite her qualifications she was rejected, and (d) others of a similar credit stature were extended credit or were given more favorable treatment than the plaintiff. *See Nicholson*,

2007 WL 3407045, at *6. If Floyd-Keith can establish a prima facie case, then the burden shifts to the defendants to produce a legitimate, nondiscriminatory reason for the adverse credit action. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04; *Nicholson*, *supra*. If the defendants meet their burden of production, then Floyd-Keith must present substantial evidence that the defendants' justification for the adverse credit action is pretextual. *Id.* A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the [creditor] or indirectly by showing that the [creditor's] proffered explanation is unworthy of credence." *Nicholson*, *supra* (citing *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

To the extent Floyd-Keith alleges that she was treated differently from other applicants by being subjected to a more vigorous application process, the court construes this as a disparate treatment claim. To establish a prima facie case of disparate treatment, the plaintiff must show that there were applicants not within her protected class, who were similarly situated, but who were treated more favorably. *See Nicholson*, *supra*. *See also Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). Proving a prima facie case is not onerous; it requires only that the plaintiff present sufficient evidence to permit an inference of discrimination. *Burdine*, 450 U.S. at 253-54. The defendants do not dispute that Floyd-Keith is an African-American woman and that she applied for a home loan through a mortgage broker at Superior Mortgage. They do disagree, however, as to whether similarly situated persons outside of

8

the plaintiff's protected class received more favorable treatment.

> . . . In the ECOA context, courts have . . . insisted on proof that similarly-situated persons outside the protected class were treated more favorably than the plaintiff. *See Visconti v. Veneman*, 2006 WL 3069214, *3 (3rd Cir. Oct. 30, 2006) ("To establish a *prima facie* case of discrimination under the ECOA in these circumstances, the Viscontis must establish, inter alia, that others not in their protected class were treated more favorably."); *Cooley* [*v. Sterling Bank*], 280 F.Supp.2d [1331,] 1339-40 [(M.D. Ala. 2003)] (characterizing fourth element of *prima facie* case in ECOA context as requiring proof "that the defendant continued to approve loans for applicants outside of the plaintiff's protected class with similar qualifications," and explaining that plaintiff must show that similarly situated non-minority applicants have been treated differently in order to satisfy the *prima facie* test).

*Nicholson*, 2007 WL 3407045, *7.

The plaintiff alleges that she is similarly situated to one white applicant – Judy Connell ("Connell"). (Pl's Dep., p. 146.) Specifically, Floyd-Keith argues that Connell told her that "she's been through . . . [a] similar situation as far as the purchase. And she indicated in reference to the invoice and her circumstances, from the way she put it, was far worse and she had no problem." (*Id*., pp. 146-47.) The defendants assert that Connell is not a proper comparator because there is no evidence that Connell submitted a loan application to them. During her deposition, Floyd-Keith indicated that she did not know who Connell's employer was at the time she applied for a loan or the duration of her employment, that she did not know the amount of her mortgage, and that she was uncertain whether she had submitted a loan application to the defendants. (*Id*.) The plaintiff has failed to present any

9

evidence creating a genuine issue of material fact about whether she was similarly situated to a white applicant. Floyd-Keith's mere allegation with no attendant proof that Connell applied for and received a loan with an unknown mortgage company with "far worse" financial circumstances is insufficient to establish that both Floyd-Keith and Connell were similarly situated. Thus, Connell is not a proper comparator in this case.

At best, Floyd-Keith presents nothing more than unsubstantiated allegations and conclusory statements in opposition to the defendant's motion for summary judgment with respect to her differential treatment claim. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See, e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). *See also Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976) (conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment).[4] "The ECOA is not a general, catch-all, prophylactic remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined; rather, the conduct it proscribes is the discriminatory administration of a credit transaction." *Nicholson*, 2007 WL 3407045, * 5. Given that Floyd-Keith has failed to demonstrate that defendants treated similarly situated applicants outside her classification more favorably, this court concludes that Floyd-Keith has failed to demonstrate

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

a prima facie case of racial discrimination.

Moreover, even if this court were to assume *arguendo* that Floyd-Keith established a prima facie case of discrimination, the defendants have proffered a legitimate nondiscriminatory reason for their decision to deny the application for credit, and Floyd-Keith has not demonstrated that the defendants' reasons were merely a pretext for discrimination. The defendants assert that Floyd-Keith was denied a loan because the paychecks submitted to Homecomings reflect that her net pay that did not support the income being used for the loan. (Defs' Ex. 3, Flores' Dep. P. 2.) Although Floyd-Keith submitted financial records indicating that she received a net pay of $ 412.10 from her employer on a weekly basis between May 31, 2007, and June 7, 2007, Floyd-Keith's subsequent paychecks indicate that she received less than $400.00 each paycheck and that her net pay fluctuated. (Defs' Ex. 3, Attach. to Flores' Affid., pp. 179-186.) For example, Floyd-Keith received $226.01 on July 11, 2007; $329.88 on July 25, 2007; $371.99 on August 1, 2007; and $365.31 on August 8, 2007. (*Id*., pp. 179-182.) The defendants assert that they denied Floyd-Keith's application due to the inconsistencies in her paychecks and pay stubs indicating that her income was insufficient for the amount of credit requested. (Flores' Affid., p. 3.) Homecomings also asserts that Floyd-Keith's application was denied "[b]ased on the low income reported in the loan application documents, the 100% [combined loan to value], the 63% [debt-to-income] ratio, the inability to verbally verify Ms. Floyd-Keith's current employment, and Homecoming's history with Ms. Floyd-Keith's mortgage broker."

11

(Attach. to Doc. No. 69, Defs' Ex. 2, Jann Neely's Affid., p. 2.)

Floyd-Keith argues that the defendants' reasons are pretextual because she was required to submit pay stubs, paychecks, and other employment information numerous times as part of the loan application process and that these requirements were not specified on the defendants' website. The court concludes that Floyd-Keith's arguments are unavailing. Requiring Floyd-Keith to submit additional pay stubs and other proof of employment is not evidence of pretext, especially in light of the inconsistencies of net pay between each paycheck and the defendants' reasonable concern that Floyd-Keith's income would be insufficient to meet loan payments. There is simply no evidence from which a reasonable jury could conclude that the defendants' actions were in any way motivated by an improper discriminatory bias. Consequently, the plaintiff's argument fails to establish that the defendants' proffered reasons were pretextual. This court therefore concludes that the defendants' motion for summary judgment with respect to Floyd-Keith's claim that the defendants violated the ECOA by subjecting her to racial discrimination claim should be granted.

### 2. Notice

In addition to the generalized prohibition of discrimination, the ECOA sets forth procedural requirements for extending credit and communicating with all applicants. *See Nicholson*, 2007 WL 3407045, *5 n. 9 (citing *Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004)). The plaintiff asserts that the defendants violated the ECOA by failing to provide

proper notice of the reasons for denying her loan application.

Title 15 U.S.C. § 1691 provides, in pertinent part:

(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by –

   (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

   (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action.

(4) Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

In addition, 12 C.F.R. § 202.9(g), which implements the ECOA, provides:

13

> . . . If no credit is offered or if the applicant does not expressly accept or use the credit offered, each creditor taking adverse action must comply with this section, directly or through a third party. A notice given by a third party shall disclose the identity of each creditor on whose behalf the notice is given.

The defendants contend that they complied with § 1691(d)(2)(4) and 12 C.F.R. § 202.9 when they provided the statutory notice to Superior Mortgage. The evidence indicates that, on August 22, 2007, Homecomings sent a letter to the plaintiff's broker, Superior Mortgage, advising that "you must provide the applicant(s) with the attached Notice of Adverse Action as required by the Equal Credit Opportunity Act and the Fair Credit Reporting Act." (Defs' Ex. 3, p. 161, 341.) Homecomings attached to the letter a "Statement of Credit Denial, Termination, or Change" stating that the principal reason for the plaintiff's credit denial was due to the length of her employment. (Defs' Ex. 3, p.163.)

Although Floyd-Keith asserts she did not receive the notice of adverse action, there is no evidence demonstrating that Homecomings did not send the notice to Superior Mortgage. Because Homecomings complied with the ECOA by delivering the notice to Superior Mortgage, as provided for in 12 C.F.R. § 202.9(g), this court concludes that Floyd-Keith cannot demonstrate a material issue of disputed fact with respect to her contention that the defendants failed to provide the proper statutory notice. Consequently, the defendants' motion for summary judgment with respect to Floyd-Keith's claim that the defendants violated the ECOA by failing to provide her the proper statutory notice should be denied.

### B. The FHA Claim

In her amended complaint, the plaintiff alleges that the defendants discriminated against her by failing to disclose all terms, conditions, and other information related to her application and subsequent denial of a residential loan. Specifically, Floyd-Keith alleges that the defendants treated her differently from similarly situated white people during the lending process and denied her a loan based on her race.

Under the FHA, no person or business entity may discriminate against any person on the basis of race when engaging in "residential real estate-related transactions." 42 U.S.C. § 3605(a). A "residential real estate-related transaction" means the "making or purchasing of loans . . . for purchasing . . . or maintaining a dwelling; or secured by residential real estate." 42 U.S.C. § 3605(b). Prohibited practices under the FHA include "providing information which is inaccurate or different from that provided others, because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.120(b).

Under both the FHA and ECOA, a plaintiff "must show that 'race was a motivating consideration in the [defendants'] decision' not to make the loan." *Latimore*, 979 F. Supp. at 664. To establish a prima facie case of loan application discrimination under 42 U.S.C. § 3605, a plaintiff must establish that (1) she is a member of a protected class, (2) she applied for and was qualified for a loan, (3) the loan was rejected despite her qualifications, and (4) the defendants continued to approve loans for applicants outside her class but otherwise similar to those of the plaintiff. *See, e.g.*, *Boykin v. Bank of America Corp.*, 162 Fed. Appx.

837, 839 (11th Cir. 2005); *Latimore v. Citibank, FSB*, 979 F. Supp. 662, 665 (N.D. Ill. 1997); *Frison v. Ryan Homes*, No. Civ. A. AW-04-350, 2004 WL 3327904, * 5 (D. Md. Oct. 29, 2004) (unpublished).

As previously discussed, Floyd-Keith has failed to establish a prima facie case of discrimination because she has not demonstrated that similarly situated applicants were treated differently. The plaintiff's one comparator, Connell, is not similarly situated to Floyd-Keith, "as nothing is known about [Connell's] relevant financial background[] or the cost[] or amount[] of [her] loan." *Boykin*, 162 Fed. Appx. at 840. Moreover, the plaintiff has failed to demonstrate that the defendants' reasons for denying her application for a residential loan were pretextual. This court therefore concludes that the defendants' motion for summary judgment with respect to the FHA claim should be granted.

### C. The FCRA Claim

Floyd-Keith asserts that the defendants violated the FCRA by failing to provide her with a notice of adverse action. Under the FCRA, if a person takes adverse action against a consumer based on information contained in the consumer's credit report, the person shall provide notice of the adverse action. 15 U.S.C. § 1681m(a). The defendants argue that there is no private cause of action under 15 U.S.C. § 1681m.[5]

---

[5] The court notes that, on December 4, 2003, Congress enacted the Fair and Accurate Credit Transaction Act of 2003 ("FACTA"), 20 U.S.C. §§ 1681 *et seq*. Prior to the enactment of FACTA, persons failing to comply with § 1681m were subject to both administrative and private enforcement actions. *See Crowder v. PMI Mortgage Insurance Co.*, No. 2:06cv0114-VPM, 2006 WL 1528608, * 2 (M.D. Ala. 2006) (unpublished) (citing 15 U.S.C. §§ 1681n). FACTA, however, amended §1681m to eliminate private enforcement of certain provisions *Id*.

Title 15 U.S.C. § 1681m(h)(8)(A) provides that civil liability for willful or negligent non-compliance "shall not apply to any failure by any person to comply with this section." The FCRA further provides that § 1681m "shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section." 15 U.S.C. § 1681m(h)(8)(B). Thus, there is no private right of action to enforce § 1681m. *See*, *e.g.*, *Crowder v. PMI Mortgage Insurance Co.*, No. 2:06cv0114-VPM, 2006 WL 1528608, * 2 (M.D. Ala. 2006); *Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir. 2006) (holding "[t]he unambiguous language of § 1681m (h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m"); *Soroka v. JP Morgan Chase & Co.*, 500 F. Supp. 2d 217 (S.D.N.Y. 2007) (stating "The unambiguous plain language of the FCRA makes it clear that Congress intended for this section to be enforced only by Federal administrative agencies."). Thus, Floyd-Keith does not have a private right of action concerning her claim that she was not provided the Notice of Adverse Action under the FCRA. Consequently, the defendants' motion for summary judgment should be granted with respect to the plaintiff's FCRA claim.

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be GRANTED. (Doc. No. 67)

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before**

**October 1, 2010**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 17th day of September, 2010.

        /s/Charles S. Coody
        CHARLES S. COODY
        UNITED STATES MAGISTRATE JUDGE